JACKSON BREWING CO. v. AARON ROSEN

___

(May 7, 1928. Opinion and Decree.)

___

*(Syllabus by the Court)*

1. **Louisiana Digest—Mandate—Par. 8, 9.**

To prove that A has signed a certain contract as the authorized agent of B, evidence tending to show a temporary partnership agreement between A and B as to a much larger contract interest with reference to same subject matter is not sufficient.

2. **Louisiana Digest—Appeal—Par. 625.**

Decision of trial court, where amply sustained by the weight of the evidence, will be sustained.

Appeal from Civil District Court, Div. "A." Hon Hugh C. Cage, Judge.

Action by Jackson Brewing Co. against Aaron Rosen.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for plaintiff, appellant.

Woodville and Woodville, of New Orleans, attorneys for defendant, appellee.

JONES, J. This suit for One thousand, nine hundred seven and 36-100 ($1,907.36) Dollars, damages for alleged breach of

contract, was filed on July 16, 1924. As the contract for purchase of ten cars of bottles, copied in full in Paragraph VI of the petition and later offered in evidence, was dated June 2, 1920, and was signed American Bottle Co., M. R. Rosen, plaintiff alleges that M. R. Rosen was acting as the authorized agent of his father, A. Rosen, the defendant, in signing the document.

Defendant, after denying all knowledge of the existence of the contract, specially denied that he had authorized his son to sign the contract for him or that he had ever ratified the contract in any way.

The Judge of the lower court, after a thorough analysis of the evidence, found that defendant had sustained his defense and dismissed the suit.

Plaintiff has appealed.

The sole question before us is one of fact. Has plaintiff proved the alleged agency of the son?

At the outset we admit that he has proved conclusively that defendant did business both before and after the date of this contract in the name of American Bottling Company, but the record also shows that defendant's son was operating individually under the same name during that time and it was clearly necessary for plaintiff to prove in addition to the above fact, that the son was acting for his father in this *specific instance*. Plaintiff clearly recognized this burden and, although he was unable to offer any direct evidence on this point, he has sought to prove it by the testimony of L. A. Henline, former cashier of the Liberty Bank & Trust Company, to the following effect:

One of the stockholders of the bank stated that bottles were scarce at the time and that M. R. Rosen, who had large contracts to supply bottles at a good price, needed financing to get banking credit. A. Rosen, defendant, was required to transfer his account from another bank to the Liberty, and on March 30, 1920, an account was opened there in the name of American Bottle Company, of which A. Rosen was proprietor and M. R. Rosen manager; the first loan of Five hundred ($500.00) Dollars was made on that day and from that time until June 28, 1920, various other loans were made on notes of American Bottle Company, A. Rosen, proprietor, secured by bills of lading on carloads of bottles; A. Rosen, defendant, was alone responsible to the bank.

June 7, 1920, on urgent request of defendant, balance in the account of the American Bottle Company was withdrawn and defendant, A. Rosen, on that day opened an individual account in his own name, a written agreement having then been prepared by him as cashier and signed by both Rosens according to the terms of which M. R. Rosen would from that date become the sole proprietor as well as manager of the bottle company.

A check for Five thousand, two hundred fifty-one and 50-100 ($5,251.50) Dollars, dated June 2, 1920, given by plaintiff to the bottle company in payment for bottles was endorsed by the payee and deposited on June 2, 1920, in the bank, the proceeds thereof being used to take up the joint debts above described, the balance of these items on June 4th amounting to Five thousand, two hundred forty-five and 26-100 ($5,245.26) Dollars.

Defendant alone was responsible to the bank for these loans, checks of plaintiff, No. 18538 for One thousand, one hundred seventy ($1,170.00) Dollars, No. 18541 for One thousand, four hundred eighty ($1,-480.00) Dollars, and No. 18540 for One thousand, five hundred fourteen ($1,514.00)

Dollars, endorsed American Bottle Com-. pany, M. R. Rosen, proprietor, approved by him, were all accepted after the change in the account was made on June 7th.

On cross-examination he stated bills of lading were delivered to M. R. Rosen, but that notes *were signed only by American Bottle Co., A. Rosen*, proprietor; agree- ment by which defendant gave up his interest was made on June 7th; does not know what became of the agreement or signature cards.

His testimony is partly confirmed by the following documents in the record:

(1) Ledger sheet of the bank showing account of American Bottle Company, opened on March 30, 1920, with loan of Five hundred ($500.00) Dollars and vari- ous other credits and debits up to June 28, 1920.

(2) Typewritten statement of the bal- ance of the American Bottle Company on June 7, 1920, showing deposits and with- drawals down to that date when account was apparently balanced.

(3) Typewritten statement of checks drawn and deposits made by A. Rosen, the account having apparently been opened on June 7, 1920, with a deposit of Six hundred twenty-nine and 09-100 ($629.09) Dollars and still continuing up to January 5, 1925.

(4) Two checks of plaintiff, one for Two hundred thirty-eight and 34-100 ($238.34) Dollars, dated June 25, 1920, the other for Two hundred thirty-two and 85-100 ($232.85) Dollars, dated June 11, 1920, endorsed by A. Rosen.

His testimony as to signatures on the notes is contradicted by the notes them- selves, five of which are in the record, all being signed by American Bottle Com- pany, A. Rosen, M. R. Rosen, and each

showing on the back the collateral, namely bill of lading on certain car of bottles, endorsed by American Bottle Company and M. R. Rosen, manager.

Taking this testimony at its best for plain- tiff, it shows that there was a partner- ship between the father and son with refer- ence to the son's purchase of bottles, which might have included the contract involved herein, but the testimony, no matter how favorably construed for plaintiff, fails to prove the agency of the son in this par- ticular instance. This conclusion is con- firmed by following facts:

Both the defendant, his son and his daughter, who was acting as his secretary during this entire period, all swear that this was the son's contract and the father knew nothing of it.

The attitude of Mr. Fabacher, the presi- dent of the plaintiff company, toward this transaction is correctly shown in the fol- lowing extract from the opinion of the trial Judge, who prefaces his reasons for judgment in this case by the statement that he had become and was still preju- diced against both the Rosens owing to several matters that had previously come before this court:

"Now, if I had found that the Jackson Brewing Company, through its President, who made this contract, had known the American Bottle Co. by reputation, and had known and believed that Aaron Rosen was the proprietor, and that by making use of this name, The American Bottle Company, that it had been defrauded, I would not have hesitated, under the proper pleadings, to hold him. But I asked Mr. Fabacher, its President, what knowledge he had of the American Bottle Company, and he said he never heard of such a concern, never heard of Aaron Rosen and never knew anything of them until this young man, Maurice Rosen, appeared in

his office in answer to the broadcasting he had done to everybody in New Orleans, who had bottles to sell, to come sell them to him, and he dealt with this young man cn the theory that he had bottles and could deliver, and he was in need of them and he incurred no liability, because he could afford to deal with an absolute stranger, who could get no money until he had a carload of bottles ready to deliver, with sight draft drawn by the vendor, with bill of lading attached and when the Jackson Brewing Company took up the bill of lading they got possession of the bottles, and under their agreement, they would withhold from Rosen a sufficient percentage of the invoice price to make themselves secure on bottles not up to specifications and for breakage.

"I am, as I say, satisfied that the father and son, after embarking in this transaction, as a special kind of partnership, did dissolve it and the father withdrew and left the son alone in it, and I believe the son made that contract with the Jackson Brewing Company for his own benefit, and the Jackson Brewing Company not having been misled by this juggling of the name, which had been freely indulged in, had no cause to complain."

Alphonso, an employee, and Cobb, the secretary of plaintiff company, testify that M. R. Rosen was the only one whom they consulted with reference to this matter. In a letter written March 10, 1921, Cobb refers to this as a debt of M. R. Rosen. Though defendant had been selling bottles to defendant off and on during the four years that intervened between the signing of this contract and the filing of this suit, the record nowhere shows any demand made of him.

For above reasons the judgment is affirmed.